# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Kirk R. House,<br><br>        Debtor. | Chapter 7<br><br>Case No. 23-10411 (LSS)<br><br>**Re: Docket No. 30** |
| Sandra L. Johnston,<br><br>        Plaintiff,<br><br>v.<br><br>Kirk R. House,<br><br>        Defendant. | Adv. Pro. No. 23-50426 (LSS)<br><br>**Re: Docket No. 1** |

## OPINION

Before the Court are two matters that were heard simultaneously on January 5, 2024: Debtor's Motion to Vacate Judgment Lien[1] and Ms. Johnston's complaint to determine that the debt Mr. House owes her is non-dischargeable.[2] For the reasons set forth below, the Court concludes a portion of the debt owed to Ms. Johnston by Mr. House is non-dischargeable. The Court also concludes that a portion of the judicial lien obtained by Ms. Johnston pre-bankruptcy is voidable.

---

[1] Motion to Vacate Judgment Lien, Case No. 23-10411-LSS, ECF No. 30.

[2] Complaint, Adv. Proc. No. 23-50426, ECF No. 1.

**Procedural Background**

Mr. House filed a voluntary petition under chapter 7 of the United States Bankruptcy Code on April 4, 2023. The court's docket reflects that David W. Carickhoff was appointed the chapter 7 trustee and the section 341 meeting has yet to be concluded. The only creditor who has taken a significant interest in this case is Sandra L. Johnston. She filed a motion for relief from stay, a motion to dismiss the case and the adversary proceeding seeking to find the debt owed to her by Mr. House non-dischargeable. In addition to opposing the relief sought by Ms. Johnston, Mr. House filed the Motion to Vacate Ms. Johnston's prepetition judgment lien.

The Court held a combined evidentiary hearing on January 5, 2024. Ms. Johnston appeared pro se and Mr. House was represented by counsel. Both Mr. House and Ms. Johnston testified. The Court sustained objections to certain evidence Ms. Johnston sought to introduce. In particular, the Court did not accept the affidavits Ms. Johnston proffered because the witnesses were not present at the hearing and therefore not subject to cross-examination. The Court also denied entry into evidence of certain photographs as not relevant. Finally, the Court entertained legal argument.

The Court has considered the evidence, judged the credibility of the witnesses and taken into consideration certain uncontested facts surrounding Ms. Johnston's prepetition judgment. The Court has also considered legal argument. Accordingly, the matter is ripe for a decision.

**Facts**[3]

Mr. House and Ms. Johnston were in a relationship on and off for a period of years prepetition. During that time, Ms. Johnston also worked for Mr. House, who had a tree service business.

In 2019, Ms. Johnston withdrew a significant sum from her retirement account and deposited it into TD Bank. From those funds, Ms. Johnston loaned Mr. House $27,500 in cash to purchase a truck and wood chipper for Debtor's business. This loan has not been repaid.

In 2019 and 2020, Ms. Johnston withdrew $20,000 from her TD Bank account. Mr. House offered or agreed to hold the money for Ms. Johnston at his house. The $20,000 was placed in four envelopes and kept in a safe located in Mr. House's bedroom.[4] The cash was given to Mr. House solely for purpose of storing/safekeeping for Ms. Johnston as she determined it was inconvenient to continue to hold her money at TD Bank. Mr. House admitted he did not have permission to use the $20,000, which belonged at all times solely to Ms. Johnston. Ms. Johnston used a portion of the $20,000 placed in the safe. She lent $3,223 to Mr. House to buy a corvette, took $1,000 to have in her possession on a drive to Massachusetts in case she had car troubles and used $3,000 to buy a pickup truck. Ms. Johnston did not use the remaining $12,777.[5]

---

[3] This Opinion constitutes the Court's findings of fact and conclusions of law as required by Federal Rules of Bankruptcy Procedures 7052 and 9014(c).

[4] Mr. House denied that he had a home safe and stated that the cash was placed in a dresser drawer. For purposes of this opinion, it does not matter. But, I find Ms. Johnston's testimony on the existence of the safe and the storage of the $20,000 in the safe to be credible and Mr. House's testimony on this subject to not be credible.

[5] I do not believe Mr. House's testimony that Ms. Johnston used $2,000 for trips to Atlantic City with Mr. House's sister and Ms. Johnston's daughter or that $3,000 of the funds were used to

3

On multiple occasions both during and after their relationship ended, Ms. Johnston asked Mr. House to pay back the loans and/or otherwise give her the cash remaining in the safe. Mr. House did not do so.

Ms. Johnston sued Mr. House in the Superior Court of the State of Delaware. On August 31, 2021, Judge Primos entered judgment (effective as of July 9, 2021) in favor of Ms. Johnston and against Mr. House in the amount of $43,500 plus interest ("Superior Court Judgment").[6] On February 2, 2023, the Kent County Sheriff's Office levied on Mr. House's goods and chattels pursuant to a writ of *fi fa*. The Sheriff's Return specifically listed five "Vehicles on property owned by Def. Kirk R. House."[7] The Sheriff scheduled a sale of the vehicles for April 13, 2023. Mr. House filed bankruptcy on April 4, 2023 to stop the Sheriff's sale.

---

buy/repair a furnace for Ms. Johnston's home in Massachusetts. Nor do I believe his testimony that she used $1,000 for speeding tickets and lost $1,000. While Mr. House did testify that he paid the $223 in state taxes for the Corvette, Ms. Johnston did not say he paid these taxes and the Complaint also does not account for that. Accordingly, I have deducted the entire amount of $3,223 for the purchase of the Corvette from the $20,000 in the safe.

[6] *Sandra L. Johnston v. Kirk R. House*, C.A. No. K20C-12-019 NEP.

[7] C.A. No. K20C-12-019 NEP (An INVENTORY and APPRAISEMENT of the Goods and Chattels of: Kirk R. House) ("Inventory"). The description of the items seized as listed on the Inventory is:

Vehicles on property owned by Defendant Kirk R. House

1) 1992 GMC Sierra (green) Truck, VIN# 1GDJK34J7NE550658

2) 2003 Winnebago Motor Home (white), VIN# 5B4MP67G033358811

3) 2008 GMC C7500 Chipper Truck (white), VIN# 1GDJ6C1G28F406494

4) 1999 GMC C7500 Boom Truck (orange), VIN# 1GDL7H1D7XJ500889

5) Misc. chainsaw parts located inside shed.

*Discussion*

I.   **Non-dischargeability of Debt to Ms. Johnston**

By the Complaint, Ms. Johnston seeks to have the $43,500 plus interest awarded to her by the Superior Court declared non-dischargeable.

Providing debtors with a fresh start—that is a new beginning unburdened by overwhelming debt—is a primary goal of the Bankruptcy Code.[8] The Bankruptcy Code accomplishes this goal through the discharge of a debtor's pre-bankruptcy debt.[9] But, there are limits on a debtor's ability to obtain a fresh start: the "opportunity for a completely unencumbered new beginning [is limited] to the honest but unfortunate debtor."[10] Certain of these limitations are set out in section 523 of the Bankruptcy Code which lists nineteen exceptions to discharge.[11] Because of the Bankruptcy Code's paramount interest in providing a fresh start, however, these exceptions are construed "narrowly against the creditor and in favor of the debtor."[12] The creditor must prove non-dischargeability by a preponderance of the evidence.[13]

---

[8] *In re Brady*, 458 B.R. 814, 819 (Bankr. D. Del. 2011).

[9] *See* 11 U.S.C. § 727(b) ("[A] discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter. . . ."); *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 384 (1977)) (Congress intended the discharge to serve as "the heart of the fresh start provisions of the bankruptcy law.").

[10] *Brady*, 458 B.R. at 820 (citing *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991)).

[11] *Id.* (citing *Cohen v. de la Cruz*, 523 U.S. 213 (1998)); 11 U.S.C. § 523.

[12] *In re Mehta*, 310 F.3d 308, 311 (3d Cir. 2002) (quoting *In re Pelkowski*, 990 F.2d 737, 744 (3d Cir. 1993)).

[13] *Grogan*, 498 U.S. 279.

Ms. Johnston also contends that sections 727(a)(2)(A), 727(a)(4)(A)-(B), and 727(a)(6)(A) apply and render Mr. House's debt to her non-dischargeable. Section 727(a) does not address specific debts; if a creditor is successful in proving that a debtor's conduct falls within one of the enumerated sections, then a debtor does not receive a discharge at all. The universal bar to discharge available under section 727(a) is an extreme penalty; Congress only intended to apply this harsh result where the Court finds proof that the debtor acted improperly.[14] Again, because a discharge is at the heart of a debtor's fresh start, section 727 is to be construed liberally in favor of the debtor.[15] The objector must show by a preponderance of the evidence that the discharge cannot be granted.[16]

The Court will start with a discussion of section 727 because if plaintiff were successful on this basis Mr. House would be denied any discharge and it would not be necessary to address Ms. Johnston's individual debt.

### A. Mr. House is entitled to a general discharge

The Complaint lists sections 727(a)(2)(A), (a)(4)(A) and (B) and (a)(6)(A) as a legal basis for the relief sought. Section (a)(2)(A) requires a finding that the debtor acted with the intent to defraud creditors or to remove, destroy or conceal property within the year prior to the bankruptcy filing.[17] Section (a)(4)(A) and (B) require a finding that the debtor

---

[14] *Rosen*, 996 F.2d at 1531, 1534

[15] *Id.* at 1534.

[16] *In re Kamara*, Adv. Proc. No. 10-55491, 2012 WL 5879718, at *3 (Bankr. D. Del. Nov. 20, 2012) (citing *Wachovia Bank v. Spitko (In re Spitko)*, 357 B.R. 272, 298 (Bankr. E.D. Pa. 2006)).

[17] 11 U.S.C. § 727(a)(2)(A) provides:

(a) The court shall grant the debtor a discharge, unless—

knowingly made a false oath or used a false claim in the bankruptcy case.[18] Finally, section (a)(6)(A) requires a finding that the debtor has refused to obey a lawful order of the Court.[19]

The Complaint focused on the debt to Ms. Johnston and specifically sought to exclude the $43,500 judgment awarded to her from discharge. But, the Motion for Dismissal[20] filed earlier in the case does contain certain factual assertions that arguably fall within the ambit of section 727. Nonetheless, the evidence adduced at the hearing did not show by a preponderance of the evidence that Mr. House transferred or removed property within the year prior the bankruptcy filing or made a false oath in connection with this case. While Mr. House confirmed that certain property he used for business purposes was titled in

---

    (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–

        (A) property of the debtors, within one year before the date of the filing of the petition . . . .

[18] 11 U.S.C. § 727(a)(4)(A)-(B) provides:

    (a) The court shall grant the debtor a discharge, unless—

    (4) the debtor knowingly and fraudulently, in or in connection with the case–

        (A) made a false oath or account;

        (B) presented or used a false claim;

[19] 11 U.S.C. § 727(a)(6)(A) provides:

    (a) The court shall grant the debtor a discharge, unless—

    (6) the debtor has refused, in the case–

        (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;

[20] Motion for Dismissal, Case No. 23-10411-LSS, ECF No. 10.

7

his father's name, the testimony did not establish that the property was re-titled in the year before the petition or that the property was improperly titled in the first instance. Further, while Ms. Johnston raised serious questions with respect to whether Mr. House accounted for all his property on his schedules (specifically, certain firearms she contends he owns), the evidence did not establish by a preponderance of the evidence that he owned firearms as opposed to crossbows.

Finally, Ms. Johnston argues that Mr. House's conduct falls under section 727(a)(6)(A) because he has refused to pay her on the Superior Court Judgment, defying that lawful order. While it is true Mr. House has not paid the judgment, section (a)(6)(A), by its terms, refers to the refusal to obey a lawful order of the court in the bankruptcy case.[21] It does not include the failure to comply with an order awarding a judgment before the filing of the bankruptcy case. From a practical standpoint, this makes sense, as "bankruptcy is *intended* to stay and prevent the enforcement of various prepetition court orders."[22] Here, there is no allegation, much less evidence, that Mr. House has violated an order of this court.

Denying a discharge is an extreme remedy; indeed it is a penalty. On the evidentiary record, I cannot find that Ms. Johnston has proven by a preponderance of the evidence that Mr. House's conduct falls within the bounds of section 727. While Ms. Johnston raised

---

[21] *In re Bressler*, 601 B.R. 318, 333 (Bankr. S.D.N.Y. 2019) (this discharge exception is limited by the language "in the case" and "of the court" to orders within the bankruptcy proceeding) (citing *In re Veino*, Adv. Pro. No. 14-1025-BAH, 2016 WL 6134806, at *7 (Bankr. D.N.H. Oct. 19, 2016); *Jackson v. Jackson (In re Jackson)*, 548 B.R. 353, 386 (Bankr. N.D. Ga. 2016)).

[22] *Jackson*, 548 B.R. at 386 (emphasis in original).

some not-insignificant questions and I find Mr. House to be less than a totally credible witness, the evidence is not there to deny Mr. House a general discharge.

### B. A portion of the debt owed to Ms. Johnston is non-dischargeable

Ms. Johnston asserts non-dischargeability of the debt owed to her under sections 523(a)(2)(A), 523(a)(4), 523(a)(6) and 523(a)(19)(B)(i).

*(i) Sections 523(a)(2)(A) and (a)(19)(B)(i) are not a basis for the relief sought*

The exceptions outlined in sections 523(a)(2)(A) and (a)(19)(B)(i) do not apply here. Section 523(a)(2)(A) provides that a debt obtained by "false pretenses, a false representation, or actual fraud" is not dischargeable.[23] The court is to look to common law to determine what these terms mean.[24] False pretenses, false representations and actual fraud each involve a situation in which (x) someone acquires property through a misrepresentation which creates a misunderstanding of the transaction and (y) on which the other person relied.[25] Here, Ms. Johnston willingly loaned Mr. House $27,500 to purchase the truck and wood chipper. There is no evidence that Mr. House made misrepresentations to Ms. Johnston in order to obtain the loan or that Ms. Johnston did not understand the purpose

---

[23] 11 U.S.C. § 523(a)(2)(A) provides in full:

(a) A discharge under section [727] does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

[24] *Field v. Mans*, 516 U.S. 59, 69 (1995); *see also Kamara*, 2012 WL 5879718, at *7.

[25] *See Kamara*, 2012 WL 5879718, at *7; *see also In re Adesanya*, 613 B.R. 808, 826-29 (Bankr. E.D. Pa. 2020) (listing out the elements of false representation, false pretenses, and actual fraud).

9

for which the funds would be used. Similarly, Ms. Johnston willingly gave $20,000 to Mr. House to hold for her. Thus, in the first instance, Mr. House came into possession of the $47,500 legally and without false or fraudulent representations. Section 523(a)(2)(A) does not apply.

Likewise, section 523(a)(19)(B)(i) does not apply.[26] By its clear language, section 523(a)(19) concerns violation of securities law.[27] Ms. Johnston looks only to subsection (B) and argues that she has a "judgment [against Mr. House] . . . in [a] state . . . proceeding." But, subsection (B) cannot be read alone. Rather, subsection (B) must be read in

---

[26] 11 U.S.C. § 523(a)(19) provides in full:

(a) A discharge under section [the Bankruptcy Code] does not discharge an individual debtor from any debt—

(19) that–

(A) is for–

(i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or

(ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B) results, before, on, or after the date on which the petition was filed, from–

(i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;

(ii) any settlement agreement entered into by the debtor; or

(iii) any court or administrative order for any damages, fine, penalty citation, restitutionary payment, disgorgement payment, attorney fee, coset, or other payment owed by the debtor

[27] *Kamara*, 2012 WL 5879718, at *8 (quoting *Smith v. Gibbons (In re Gibbons)*, 289 B.R. 588, 589 (Bankr. S.D.N.Y. 2003)) ("The purpose of this exception is to help defrauded investors recoup their losses "and to hold accountable those who violate securities laws after a government unit or private suit results in a judgment or settlement against the wrongdoer.").

10

conjunction with subsection (A), which requires that the judgment entered be one for violation of federal securities law or for common law fraud or deceit in connection with the purchase or sale of a security.[28] Because this case involves money and there is no allegation or evidence that a security was involved, section 523(a)(19)(B)(i) does not help Ms. Johnston.

*(ii) Sections 523(a)(4) and 523(a)(6) render a portion of the debt non-dischargeable*

But, the Court finds that a portion of Mr. House's debt to Ms. Johnston is non-dischargeable under sections 523(a)(4) and 523(a)(6). Specifically, the Court concludes that the $12,777 that was not returned to Ms. Johnston from the $20,000 given to Mr. House for safekeeping is non-dischargeable. While this money originally came into Mr. House's hands in a lawful fashion, thereafter, Mr. House embezzled the funds leading to a willful and malicious injury to Ms. Johnston and her property.

Section 523(a) reads in relevant part:

(a) A discharge under section [727] does not discharge an individual debtor from any debt—

> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . .
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[29]

In applying section 523(a)(4), courts once again look to the federal common law definitions—here, embezzlement.[30] Embezzlement is defined under the federal common

---

[28] *Id.*

[29] 11 U.S.C. § 523(a)(4), (6).

[30] *In re Cunningham*, 482 B.R. 444, 447 (Bankr. N.D. Al. 2012) ("To determine whether a debt is dischargeable under § 523(a)(4), courts apply the federal common law definitions of larceny and

11

law as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come."[31]

To bring a claim for embezzlement, the plaintiff must demonstrate that (1) the property at issue belonged to the plaintiff, (2) the property was in the lawful possession of the debtor, (3) the property was appropriated by the debtor in a manner inconsistent with the debtor's scope of authorization, and (4) the debtor acted with a fraudulent intent.[32] Fraudulent intent means that "moral turpitude or intentional wrong" is involved.[33] This Court has previously described fraudulent intent as conduct that is "wrongful" and "done without excuse of color or right."[34] Further, intent may be "inferred from the totality of the circumstances."[35]

As I have already found, Ms. Johnston took $20,000 of her funds and entrusted them to Mr. House for safekeeping. Mr. House likewise admitted that the money was Ms. Johnston's and that he was not entitled to use the funds.[36] As I also found, Ms. Johnston's

---

embezzlement."); *In re Nobel*, 179 B.R. 313, 315 (Bankr. M.D. Fla. 1995) (looking to federal common law definition of embezzlement for § 523(a)(4) analysis); *In re Littleton*, 942 F.2d 551, 555 (9th Cir. 1991) (same); *In re Brady*, 101 F.3d 1165, 1172–73 (6th Cir. 1996) (same).

[31] *In re Schlessinger*, 208 F. App'x 131, 133 (3d Cir. 2006) (citing *Moore v. United States*, 160 U.S. 268, 269 (1985)).

[32] *In re Case*, 636 B.R. 852, 858 (Bankr. S.D. Fla. 2022); *In re Mack*, 2023 WL 2397345, at *3 (B.A.P. 9th Cir. Mar. 7, 2023); *Brady*, 101 F.3d at 1173; *see also In re Giarrantano*, 299 B.R. 328, 338 (Bankr. D. Del. 2003) (providing a simplified definition of embezzlement).

[33] *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 273 (2013) (quoting *Neal v. Clark*, 95 U.S. 704, 709 (1878) (discussing "fraud" and "embezzlement" under the Bankruptcy Code's predecessor)).

[34] *In re Hendry*, 428 B.R. 68, 78 (Bankr. D. Del. 2010) (citation omitted).

[35] *Id.* at 79.

[36] Even if Mr. House had not made this admission, I would find Ms. Johnston to be credible on this point.

money was placed into Mr. House's home safe in four envelopes, each containing $5,000. Further, I found that of the $20,000, Ms. Johnston used $7,233 leaving $12,777 to be returned to Ms. Johnston. Upon the demise of their relationship, Ms. Johnston repeatedly reached out to Mr. House to collect her stored money. Throughout the months during which Ms. Johnston communicated with Mr. House, he never denied having the money, nor did he assert that none was owed. He claimed to be too busy to address the situation because of family concerns. And, he simply never returned the money. The only inference the Court can make here based on Mr. House's refusal to return the money is that Mr. House kept the money for himself. This demonstrates a misappropriation of the money.[37] Similarly, Mr. House's failure to return the money to Ms. Johnston upon her many requests begs the inference that Mr. House acted "wrongfully" and "without excuse of color or right."[38]

Likewise, section 523(a)(6) renders that same debt non-dischargeable. To render a debt non-dischargeable under the (a)(6) exception, the creditor must show that the debt arose from the debtor's deliberate action which was substantially certain to produce harm.[39] The Third Circuit has held that actions are willful and malicious as contemplated by section 523(a)(6) when they "have a purpose of producing injury or have a substantial certainty of

---

[37] *See In re Bevilacqua*, 53 B.R. 331, 334 (Bankr. S.D.N.Y 1985) (finding debtor misappropriated funds from the sale of the plaintiff's car and that what debtor did with such funds was "immaterial since, in either event, [debtor] was clearly not authorized to use the proceeds").

[38] *Hendry*, 428 B.R. at 78.

[39] 11 U.S.C. § 523(a)(6); *In re Conte*, 33 F.3d 303, 309 (3d Cir. 1994).

producing injury."[40] Courts have also held that a conversion, if willful and malicious, is non-dischargeable under the Bankruptcy Code.[41]

Given the Court's determination that Mr. House embezzled the monies under section (a)(4) and given that conversion is an essential element of embezzlement, there is no question that Mr. House converted the money unto himself. Such conversion was willful because Mr. House knew that by keeping Ms. Johnston's money, which amounted to a significant amount of Ms. Johnston's retirement savings, Ms. Johnston would be that much poorer. He also knew that Ms. Johnston was having expensive dental work performed and needed funds to pay for that work. Indeed, she suggested that Mr. House repay the $27,500 loan by paying for her dental work. Needless to say, Mr. House did not do so. Mr. House's actions were neither a reckless act of retention nor an innocent unauthorized assumption. Rather, his actions were a knowing decision to retain that which was not his with the substantial certainty of injuring Ms. Johnston.

Accordingly, $12,777 of the Superior Court Judgment is non-dischargeable. Further, because the Superior Court Judgment awards interest from July 9, 2021, interest on the non-dischargeable amount is non-dischargeable as well.[42]

---

[40] *Conte*, 33 F.3d at 307-08; *see also In re Jacobs*, 381 B.R. 128, 144-45 (Bankr. E.D. Pa. 2008).

[41] *See In re Webb*, 525 B.R. 226, 232 (Bankr. M.D. Pa. 2015) (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332 (1934)).

[42] *In re Trexler*, Adv. Proc. No. 14-5133, 2016 WL 236054, at *9 (Bankr. N.D. Ga. Jan. 11, 2016).

## II. Motion to Avoid Judicial Lien

By his Motion to Vacate Judgment Lien, Mr. House seeks an Order providing that the Superior Court Judgment is "voided against the debtor." Debtor does not state the basis for the requested relief.

Section 522(f) provides that the debtor may avoid a judicial lien,[43] such as the Superior Court Judgment, to the extent that the lien impairs an exemption. In a simplified form that can be applied in the circumstances of this case, a judicial lien impairs an exemption for purposes of section 522(f) if the lien exceeds the Debtor's equity in the property.[44]

Here, by virtue of the Superior Court Judgment, there is a judicial lien on any real estate owned by Debtor located in Kent County as well as on the goods described in the Sheriff's Return. Debtor has not listed any real estate (in Kent County or otherwise) in Schedule A/B. As for the goods described in the Sheriff's Return, only the 1992 GMC 3500 Truck and the 1999 GMC C7500 Chipper Truck are listed in Schedule A/B. Debtor values the 1992 GMC 3500 Truck at $500 and the GMC C 7500 Chipper Truck at $1,000. On Schedule C, Debtor has listed both of these trucks and exempted their full value under 10 Del. Code Ann. Tit. 10 § 4914(b). As the Debtor's equity in those two trucks ($500 and $1,000, respectively) is less than Ms. Johnston's lien ($43,500 plus interest), the lien impairs the exemption on these two trucks and must be avoided.

---

[43] A judicial lien is a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36).

[44] *In re Corio*, 371 F. App'x 352, 356 n.4 (3d Cir. 2010) (quoting 11 U.S.C. § 522(f)(2)(A)) (A judicial lien impairs an exemption "to the extent that the sum of the lien, all other liens on the property, and the amount of the exemption that the debtor could claim if there were no liens on the property 'exceeds the value that the debtor's interest in the property would have in the absence of any liens.'").

**Conclusion**

For the reasons set forth above: (i) a judgment will be entered in favor of Ms. Johnston and against Mr. House in the amount of $12,777 plus interest from July 9, 2021, and (ii) an Order will be entered vacating the Superior Court Judgment lien against the 1992 GMC 3500 Truck and the 1999 GMC C7500 Chipper Truck.

Dated:  February 26, 2024

Laurie Selber Silverstein
United States Bankruptcy Judge